UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

GUSTAVO SANTOS,

Plaintiff,

-against-

E T & K FOODS, INC., BET-ER BY FAR MEATS, INC., THOMAS KALLER,

Defendants.

---------------------------------------------------------------- X

**REPORT AND RECOMMENDATION**

16 Civ. 7107 (DLI) (VMS)

**VERA M. SCANLON, United States Magistrate Judge:**

On December 25, 2016, Plaintiff Gustavo Santos commenced this action against E T & K Foods, Inc. d/b/a Met Foods, BET-ER By Far Meats, Inc., and Thomas Kaller (collectively, "Defendants"), seeking allegedly unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and unpaid wages and unpaid overtime under the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as amended by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, on behalf of himself and all similarly situated current and former non-exempt workers who elect to opt in to this action pursuant to the FLSA. Compl., ECF No. 1, ¶¶ 1-2. Plaintiff, on behalf of himself and the class, also alleges a claim under the Wage Theft Protection Act for Defendants' alleged failure to provide written notice of wage rates. Id. ¶ 3.

According to the Complaint, Defendant E T & K Foods, Inc. is a domestic business corporation that operates a grocery store known as Met Foods located at 116 Avenue U, Brooklyn, NY 11223. Id. ¶ 19. Defendant Thomas Kaller is the President of E T & K Foods, Inc. Id. ¶ 20. Defendant BET-ER By Far Meats, Inc. is a domestic business corporation that operates a grocery store known as Met Foods located at 1498 Flatbush Ave., Brooklyn, NY

11210, of which Thomas Kaller is the Chief Executive Officer. Id. ¶¶ 23-24. Plaintiff is a former employee of the Met Foods located at 116 Avenue U, Brooklyn, NY 11223. Id. ¶ 10. Defendants timely answered. ECF No. 12.

Plaintiff's counsel filed a letter addressed to the Honorable Dora L. Irizarry, the Chief District Judge to whom this case is assigned, to inform the Court that Defendants had "engaged in a series of retaliatory acts" and to seek the Court's intervention. ECF No. 5. Specifically, Plaintiff's counsel alleged that Defendant Kaller had (1) "call[ed] Mr. Santos personally and [had] his agents call [Mr. Santos] on approximately ten separate occasions," (2) waited at Mr. Santos's house and stayed outside his house for hours, (3) warned Mr. Santos about his immigration status and informed him that he is at risk of being deported, (4) directed Mr. Santos's former co-workers to contact Mr. Santos and "tell him that he should settle the case for a minimal amount of money," and (5) harassed Mr. Santos's sister and his sister's husband at his place of work. Id.

Plaintiff's counsel then filed another letter containing additional allegations of retaliation. See ECF No. 24. Specifically, Plaintiff's counsel alleged that "Mr. Kaller drove to Mr. Santos's current place of business, stepped out of his truck and took a flash photograph of Mr. Santos on his smart phone," which caused Mr. Santos "a great deal of angst as he is concerned that Mr. Kaller is taking steps to get him deported." Id. He also reiterated the earlier allegations. Id.

Defendants' counsel filed a letter in response, unequivocally denying Plaintiff's allegations, offering to make his telephone available for inspection to help show that Plaintiff's claims are baseless, and arguing that even if Mr. Kaller had taken a photograph outside of Plaintiff's new place of employment, which Defendant Kaller denies, such conduct would not constitute retaliation. ECF No. 25.

The next day, Plaintiff's counsel filed a reply in which he noted that he was "not seeking sanctions against Mr. Kaller" but rather was only requesting a conference during which the Court would "inform Mr. Kaller of the retaliatory provisions of the FLSA and NYLL." ECF No. 26. That same day, in consultation with the undersigned, Judge Irizarry scheduled a conference before her for to address the allegations in Plaintiff's letters concerning retaliatory acts, to be followed by an evidentiary hearing before the undersigned to determine whether Court intervention was appropriate. See 4/12/17 Order.

Plaintiff's counsel filed a letter requesting leave to amend the Complaint to add retaliation causes of action under the FLSA and NYLL. See ECF No. 27.

Judge Irizarry held a conference at which the parties were warned about engaging in retaliatory conduct. See Transcript of 4/24/17 Hearing before the Hon. Vera M. Scanlon, U.S.M.J. ("Tr.") 3:5-24. This Court then conducted an evidentiary hearing regarding Plaintiff's allegations of retaliation during which Plaintiff and Defendants presented evidence. See ECF No. 28. Plaintiff called the following witnesses, each of whom testified under oath: (1) Defendant Thomas Kaller, see Tr. 5:18-50:21; (2) Plaintiff's sister, Yolanda Sosa, see Tr. 51:10-67:11; (3) Plaintiff's sister's husband, Augustine Franco, Tr. 68:11-84:5; and (4) Plaintiff Gustavo Santos, Tr. 84:14-114:1. See ECF No. 28. Defendants called Francisco Zeferino Mayahou, Plaintiff's former supervisor at Met Foods, to testify. Id.; Tr. 115:7-154:14. Upon the conclusion of the evidentiary hearing, the Court reserved decision. Tr. 170:25-171:4.

After carefully considering the evidence introduced at the hearing, this Court finds that Plaintiff has not shown that Defendant engaged in any retaliatory acts. Because Plaintiff did not present credible evidence that Defendants or their attorneys "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," this Court respectfully recommends that no sanctions

against Defendants or their attorneys are warranted. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991). This Court also respectfully recommends that Plaintiff's request for leave to amend the Complaint to add retaliation causes of action under the FLSA and NYLL be denied.

## I. LEGAL STANDARDS

### a. Leave to Amend or Supplement

Plaintiff seeks to amend the Complaint in this action pursuant to Federal Rule of Civil Procedure 15(a). Where, as here, the plaintiff seeks to add related claims against the same defendants based on a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented," the request is governed by Federal Rule of Civil Procedure 15(d), not 15(a). See Fed. R. Civ. P. 15(d); Salazar v. Bowne Realty Assocs., L.L.C., 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011). That rule provides that the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Because the retaliatory acts alleged here allegedly took place after the filing of the Complaint in this action, the Court will construe Plaintiff's motion to amend as a motion to supplement the pleadings.

The analysis under both Rule 15(a) and Rule 15(d) is the same. See M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 222 (E.D.N.Y. 2010) ("The same standard . . . applies to both motions to amend and motions to supplement."). The Court has extensive discretion to decide whether to grant leave to amend or supplement after the time for amendment as of course has passed. See Kilpakis v. JPMorgan Chase Fin. Co., LLC, No. 16 Civ. 2690 (ADS) (AKT), 2017 WL 112518, at *3 (E.D.N.Y. Jan. 10, 2017). Although in general, requests for leave to amend or supplement should be freely granted, such requests should be denied where the proposed amendment would be futile. See Grullon v. City of New Haven, 720 F.3d 133,

139-40 (2d Cir. 2013)). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

**b. Retaliation Under the FLSA**

Section 215(a)(3) of the FLSA prohibits employers from engaging in retaliatory acts against employees who lodge complaints under the FLSA. Congress enacted this anti-retaliation measure "to prevent fear of economic retaliation from inducing workers quietly to accept substandard conditions, and to foster an atmosphere protective of employees who lodge such complaints." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 113 (2d Cir. 2015) (internal citations omitted). "Prohibiting retaliation against employees who make internal complaints furthers the purposes of FLSA by encouraging speedier and more efficient resolution of employee grievances, and resolving FLSA-related issues before employees have lost significant wages or other benefits." Id. at 114.

"FLSA retaliation claims are subject to the three-step burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010). "A plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of an FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. An employment action disadvantages a plaintiff if it well might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s] . . . .'" Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53,

68 (2006)). Notwithstanding the Second Circuit's references to "employee" and "employment action," Mullins, 626 F.3d at 53, some district courts in this Circuit have held "that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct." Jian Zhong Li v. Oliver King Ents., Inc., No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015). Such circumstances are "relatively narrow." Id.; see Dunn v. Sederakis, 143 F. Supp. 3d 102, 114 (S.D.N.Y. 2015) ("[M]erely pressuring a claimant's union representatives not to assist her lawsuit [against the claimant's former employer] would not dissuade a reasonable worker from bringing similar complaints.").

District courts in this Circuit have held that reporting or threatening to report an undocumented immigrant to immigration authorities constitutes a retaliatory employment action under the FLSA. See Aponte v. Modern Furniture Mfg. Co., LLC, No. 14 Civ. 4813 (ADS) (AKT), 2016 WL 5372799, at *18 (E.D.N.Y. Sept. 26, 2016) ("[T]hreats to report plaintiff and his son to the immigration authorities would, by themselves, dissuade a reasonable employee from participating in this lawsuit . . . ."); Centeno-Bernuy v. Perry, 302 F. Supp. 2d 128, 130, 136 (W.D.N.Y. 2003) (finding that plaintiffs established a prima facie case of retaliation under the FLSA where they alleged, inter alia, that their former employer had reported them to Immigration and Naturalization Service a few days after learning of their FLSA action).

"Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a 'legitimate, non-discriminatory reason for the employment action.'" Mullins, 626 F.3d at 53 (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)). "If the defendant meets this burden, the plaintiff must produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were

false, and that more likely than not discrimination was the real reason for the employment action.'" Id. at 53-54 (quoting Weinstock, 224 F.3d at 42).

**c. Retaliation Under the NYLL**

Section 215 of the NYLL states that "[n]o employer or his or her agent . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" because, inter alia, that employee has instituted or is about to institute a proceeding under the NYLL. N.Y. Lab. Law § 215 (McKinney). To state a retaliation claim under Section 215 of the NYLL, "a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." Laboy v. Office Equip. & Supply Corp., No. 15 Civ. 3321 (RA) (AJP), 2016 WL 5462976, at *7 (E.D.N.Y. Sept. 29, 2016).[1] District courts in this Circuit have applied the same standard to determine whether the employer engaged in retaliatory acts under the FLSA and NYLL. See, e.g., Guallpa, No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *1 (applying the standard articulated in Mullins, 626 F.3d at 53 to NYLL retaliation claim). Threatening to contact governmental and immigration authorities has been held to constitute a retaliatory act sufficient to establish liability for retaliation in violation of the NYLL. See Perez

[1] Although retaliation claims under the NYLL are typically based on complaints made by an employee against his or her employer while employed by that employer, at least one district court in this Circuit has assumed that complaints made following the termination of an employee's employment can also serve as the basis for a retaliation claim under the NYLL. See, e.g., Guallpa v. N.Y. Pro Signs Inc., No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *1 (S.D.N.Y. May 27, 2014) (in which the court did not address the fact that both the complaint and alleged retaliatory conduct took place after the plaintiff left his employment, but held that the alleged retaliatory conduct did not constitute retaliation for other reasons), R&R adopted sub nom. Guallpa v. N.Y. Pro Signs Inc., No. 11 Civ. 03133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

v. Jasper Trading, Inc., No. 05 Civ. 1725 (ILG) (VVP), 2007 WL 4441062, at *3 (E.D.N.Y. Dec. 17, 2007).

**d. Sanctions**

Federal courts have the inherent power to impose sanctions on any party or attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, Inc., 501 U.S. at 43-46. "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Id. at 43 (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-631 (1962)). Such powers may be exercised sua sponte. Id. at 42 n.8.

## II. ANALYSIS

As to the motion to supplement, Plaintiff has not provided the Court with a proposed Amended Complaint. In lieu of such a document, the Court will review the evidence offered at the hearing by Plaintiff to assess Plaintiff's proposed claims. The Court will view the evidence presented at the hearing in the light most favorable to Plaintiff for the purpose of considering whether Plaintiff could state a claim based on the evidence offered. Based on the evidence presented at the hearing, the Court concludes that Plaintiff does not allege facts sufficient to support a retaliation claim under the FLSA or NYLL that would survive a motion to dismiss.

As to the Court's sua sponte consideration of sanctions, the Court may make credibility determinations but in this case, it needs not because sanctions are not warranted even when the Court accepts all evidence offered by Plaintiff as credible. Although there is no question that Plaintiff engaged in protected activity by filing an FLSA lawsuit, he could not in good faith allege that Defendants engaged in any conduct that would dissuade a reasonable employee from asserting a similar FLSA or NYLL claim. See Mullins, 626 F.3d at 53. Even assuming that the

NYLL anti-retaliation provision applies to complaints made against employers following the termination of a plaintiff's employment, Plaintiff does not allege at the hearing any conduct that constitutes a threat, penalty, or discriminatory or retaliatory act sufficient to state a retaliation cause of action under the NYLL. See Guallpa, No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *9 (plaintiff's allegation that defendant informed plaintiff's new employer of his legal action against defendant (his former employer), with nothing more, was insufficient to support a retaliation claim under NYLL § 215 because it failed to establish an employment action disadvantaging Guallpa).

With respect to the first allegation—that Mr. Kaller and his agents called Mr. Santos on ten separate occasions—Plaintiff did not present evidence of acts rising to the level of retaliation. See Jian Zhong Li, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *4 ("Even assuming that some number of phone calls, text messages, and appearances outside a plaintiff's home could be sufficiently harassing to dissuade a reasonable employee from bringing an FLSA claim, the Defendants' conduct in this case does not even approach that level."). Although Plaintiff alleged by letter that Mr. Kaller or his agents called Mr. Santos ten times, see ECF No. 5, Plaintiff did not present evidence at the hearing that Mr. Kaller or his agents called Mr. Santos ten times following the filing of this lawsuit. Mr. Santos testified that he never spoke to Mr. Kaller or Mr. Zeferino on the telephone following the filing of this lawsuit. Tr. 109:25-110:6 (Santos). To the extent that Mr. Kaller did attempt to reach Mr. Santos by telephone on one occasion following the filing of this lawsuit, he did so to find out what happened and see if Mr. Santos wanted to come back to work. See Tr. 14:19-16:12 (Kaller); 29:18-30:6 (Kaller). Such a call would not dissuade a reasonable worker from filing a similar FLSA or NYLL claim against Defendants.

With respect to the second allegation—that Mr. Kaller or his agents waited at Mr. Santos's house and stayed outside his house for hours—Plaintiff did not present evidence of conduct constituting retaliation. Although Mr. Santos's sister, Yolanda Sosa, testified that Mr. Zeferino waited outside her house for an extended period on one occasion following a meeting between Mr. Zeferino and Ms. Sosa at which Mr. Zeferino offered to compensate Mr. Santos, she also said he did so with her express permission. Tr. 58:23-59:14 (Sosa); 64:17-25 (Sosa). There was no evidence presented that Mr. Zeferino's actions were intended to intimidate or harass Mr. Santos or any of his family members. A person would not have reasonably felt harassed or intimidated by the conduct described.

Plaintiff presented zero evidence with respect to the third allegation—that Mr. Kaller warned Mr. Santos about his immigration status and informed him that he is at risk of being deported. Mr. Kaller and Mr. Zeferino denied ever threatening Mr. Santos about his immigration status, see Tr. 30:7-31:1 (Kaller); 128-22-129:5 (Zeferino), and neither Mr. Santos nor other witnesses offered any testimony about Mr. Kaller or his agents warning Mr. Santos about his immigration status or that he was at risk of being deported.

The fourth allegation—that Mr. Kaller had directed Mr. Santos's former co-workers to contact Mr. Santos and tell him that he should settle the case for a minimal amount of money—does not constitute an employment action that would dissuade reasonable workers from filing similar claims. When viewed in the light most favorable to Plaintiff, the evidence reveals the following facts:

(1) Mr. Kaller gave Mr. Zeferino, Mr. Santos's former supervisor, the authority to attempt to settle the case, Tr. 45:4-25 (Kaller);

(2) Mr. Zeferino called Mr. Santos's brother-in-law and asked if he could visit Mr. Franco at the mechanic shop where he worked to discuss the lawsuit that Mr. Santos had filed against Defendants, and Mr. Franco said "it was okay that he could come see me." Tr. 71:18-74:24 (Franco).

(3) Mr. Zeferino went to the mechanic shop where Mr. Franco worked to discuss the lawsuit with Mr. Franco, at which time Mr. Zeferino asked Mr. Franco if he "could try to speak to Gustavo [Santos]" and Mr. Franco responded that he "would try to speak to him." 71:18-74:24 (Franco).

(4) Mr. Zeferino also visited Mr. Santos's apartment (where Mr. Santos lived with his sister and brother-in-law) on a maximum of three occasions,[2] but because Mr. Santos was not home on any of those occasions, Mr. Zeferino met with Mr. Santos's sister and/or brother-in-law and offered to compensate Mr. Santos in exchange for dismissing the lawsuit, see, e.g., Tr. 54:12-55:24 (Sosa); 57:2-58:12 (Sosa); 58:23-59:9 (Sosa); 74:25-76:25 (Franco);[3]

(5) Following the last meeting at Mr. Santos's home, Mr. Kaller and Mr. Zeferino visited Mr. Franco at his place of work, where Mr. Franco voluntarily spoke with them about the lawsuit, Tr. 31:16-34:5 (Kaller); 77:1-79:25 (Franco); 81:7-82:23 (Franco); 127:2-128:5 (Zeferino);

---

[2] There is a discrepancy in the testimony regarding the exact number of times Mr. Zeferino visited Mr. Santos's house and who was present at each meeting. Compare Tr. 53:19-54:8 (Sosa testifying that Mr. Zeferino visited Mr. Santos's home three times) with Tr. 119:17-19 (Zeferino testifying that he visited twice). For purposes of the analysis of Plaintiff's motion for leave to add a retaliation claim, the Court accepts the version of events most favorable to Plaintiff.

[3] There is a discrepancy in the testimony regarding whether Mr. Zeferino made a specific offer of $10,000 during one of the meetings at Mr. Santos's home, compare Tr. 126:1-9 (Zeferino) with Tr. 57:2-10 (Sosa), or whether the specific offer of $10,000 was first made at the mechanic shop, see Tr. 78:2-79:25 (Franco). This discrepancy does not affect the outcome here.

(6) At that meeting, Mr. Kaller and Mr. Zeferino conveyed an offer of $10,000 to Mr. Santos by way of Mr. Franco in exchange for settling the case, Tr. 31:16-34:5 (Kaller); 77:18-79:25 (Franco); 81:7-82:19 (Franco); 127:2-128:5 (Zeferino);

(7) In response to Defendants' offer of $10,000, Mr. Franco, on behalf of Mr. Santos, conveyed to Mr. Kaller and Mr. Zeferino a counteroffer of $20,000, which Mr. Kaller did not accept, Tr. 31:16-34:5 (Kaller); 83:12-17 (Franco); 81:7-82:20 (Franco); 127:2-128:5 (Zeferino);

(8) Since Mr. Kaller's rejection of Mr. Santos's counteroffer, there have been no direct communications between Mr. Kaller or his agents, on the one hand, and Mr. Santos or his family members on the other, except for an exchange of hellos at Met Foods, where Mr. Franco continued to shop as recently as two weeks prior to the hearing, Tr. 62:20-25 (Sosa); 82:21-83:10 (Franco); 110:1-6 (Santos); Tr. 128:1-24 (Zeferino).

Based on these facts, there was nothing improper about Mr. Kaller's or Mr. Zeferino's discussions with Mr. Santos's relatives regarding settlement of the lawsuit. If anything, a monetary offer of settlement could encourage—not dissuade—the filing of FLSA and NYLL claims by reasonable workers at Met Foods.[4] Accordingly, Plaintiff's fourth allegation does not constitute the requisite adverse employment action required to state a retaliation claim. See Jian Zhong Li, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *4.

With respect to the fifth allegation—that Mr. Kaller harassed Mr. Santos's sister and brother-in-law at Mr. Franco's place of work—Plaintiff did not present evidence that Mr. Kaller

---

[4] There was nothing improper about a party to a lawsuit communicating directly with another party. Such communications need not be made through counsel. Miano v. AC & R Advert., Inc., 148 F.R.D. 68, 82-83, as amended (Mar. 4, 1993), R&R adopted, 834 F. Supp. 632 (S.D.N.Y. 1993) ("[P]arties have a right to deal directly with each other and without the consent of an attorney, and . . . there is nothing in the disciplinary rules which restricts a client's right to act independently in initiating communications with the other side, or which requires that lawyers prevent or attempt to discourage such conduct.").

or his agents engaged in any harassing conduct at the mechanic shop where Mr. Franco works or anywhere else. It is undisputed that Mr. Zeferino visited Mr. Franco at work. Tr. 81:7-82:20 (Franco); 124:25-127:25 (Zeferino). It is also undisputed that Mr. Franco voluntarily engaged in settlement discussions with Mr. Zeferino and Mr. Kaller on behalf of Mr. Santos, who had asked Mr. Franco to communicate a counteroffer of $20,000. Tr. 81:7-82:20 (Franco); 83:13-17 (Franco). Both Ms. Sosa and Mr. Franco testified that Mr. Zeferino never threatened them or Mr. Santos during their discussions. Tr. 64:10-25 (Sosa); 80:14-81:15 (Franco). Plaintiff offered no evidence of any harassing behavior at Mr. Franco's place of work.

The sixth allegation—that Mr. Kaller waited outside the store where Mr. Santos now works and took a photograph of him—does not constitute an act that would dissuade reasonable employees from filing an FLSA or NYLL claim against Defendants. In his letter, Plaintiff's counsel wrote that Mr. Santos informed him that "Mr. Kaller drove to Mr. Santos' current place of business, stepped out of his truck and took a flash photo of Mr. Santos on his smart phone." ECF No. 24. Plaintiff's counsel explained that Mr. Kaller's alleged conduct caused Mr. Santos "a great deal of angst as he is concerned that Mr. Kaller is taking steps to get him deported." Id. At the hearing, Mr. Santos testified that on the morning of April 7, 2017, after removing the coverings from the fruits and vegetables when he arrived at his new place of work, he noticed Mr. Kaller in his van, which was stopped a few cars away from the store. Tr. 101:7-102:14. Mr. Santos further testified that when Mr. Kaller saw Mr. Santos, Mr. Kaller "drove forward and he stopped and that's when he took the photo. He had his hand on the steering wheel and with his hand he took the photo. And there was a flash. And he moved his head." Tr. 103:20-23. Mr. Santos testified that he saw Mr. Kaller stopped in his van at that location for five minutes, after which he immediately called his attorney out of concern that Mr. Kaller was seeking to get him

deported. Tr. 106:1-24. Even if these events happened as described by Mr. Santos, such conduct does not constitute an act that would be sufficiently egregious to dissuade a reasonable worker from filing similar claims.[5] Although Mr. Santos was concerned that Mr. Kaller could use the photograph allegedly taken that day to somehow seek Mr. Santos's deportation, there was no evidence offered that Mr. Kaller attempted or threatened to do so, or even vaguely referred to immigration authorities. See generally Tr. 84:14-114:2 (Mr. Santos's testimony); 4:23-50:22 (Mr. Kaller's testimony). Because the Court must apply the standard of what would dissuade a reasonable worker from making or supporting similar charges, Plaintiff's subjective reaction to Defendants' alleged conduct is of limited significance. See Jian Zhong Li, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *4 ("Because the Court must apply the standard of what would dissuade a 'reasonable worker from making or supporting similar charges,' Plaintiff's subjective reaction to Defendants' conduct is not dispositive." (quoting Mullins, 626 F.3d at 53)). Taking a photograph of a former employee following that employee's filing of an FLSA action with nothing more is insufficient to constitute a retaliatory act under the FLSA. Given the complete lack of evidence of Mr. Kaller ever having mentioned Mr. Santos's immigration status to him or his family members, Mr. Santos's concern about Mr. Kaller's alleged actions cannot constitute retaliation.

[5] Although not considered for purposes of the analysis of Plaintiff's motion for leave to amend, there are notable inconsistencies between Mr. Santos's testimony and the description of this incident in Plaintiff's counsel's letter. Compare ECF No. 24 with Tr. 101:7-106:2. Most significantly, according to the letter, Mr. Santos reported that Mr. Kaller stepped out of his van and took a flash photograph on his smart telephone, whereas Mr. Santos testified at the hearing that Mr. Kaller took the photograph while sitting inside his van with one hand on the steering wheel. Id. Given the distances described during the testimony, it is not obvious how Mr. Santos could have known Mr. Kaller was taking a photograph of him, as compared to using his cell phone in the car. In addition, Mr. Santos testified that Mr. Kaller was driving a white "closed in van," which he knew to be owned by Mr. Kaller. Tr. 111:25-112:7. Mr. Kaller testified that he owns a BMW x5, not a closed van. Tr. 154:23-155:4.

## III. CONCLUSION

Because the evidence presented at the hearing, when viewed in the light most favorable to Plaintiff, does not reveal facts that could support a cause of action for retaliation under the FLSA or NYLL, such claims would be futile. See Dougherty, 282 F.3d at 88. Accordingly, this Court respectfully recommends denying Plaintiff's motion for leave to supplement the Complaint by adding retaliation claims.[6]

Because Plaintiff did not present evidence that Defendants or their attorneys "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers, 501 U.S. at 43-46, this Court respectfully recommends that no sanctions against Defendants or their attorneys be imposed.

## IV. OBJECTIONS

This report and recommendation will be filed electronically. Written objections to this report and recommendation must be filed with the Clerk of Court within the time permitted after service of the report and recommendation, and in accordance with the Individual Rules of the District Judge. Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated: Brooklyn, New York
June 27, 2017

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

[6] This Report and Recommendation, if adopted, would not preclude an appropriate motion should Plaintiff's counsel be able to prepare a proposed amended complaint and motion that does include sufficient facts to state a claim for retaliation.