UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
GUSTAVO SANTOS,

                                  Plaintiff,

                                              16-cv-07107 (DLI) (VMS)

     -against-

E T & K FOODS INC. d/b/a MET FOODS and
BET-ER BY FAR MEATS INC. d/b/a MET
FOODS and THOMAS KALLER, individually,

                                  Defendants.
--------------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS E T & K FOODS INC. and BET-ER BY FAR MEATS Inc. d/b/a as MET FOODS AND THOMAS KALLER, INDIVIDUALLY AND ERIC RAPHAN, COUNSEL FOR DEFENDANTS

**Dated:  June 20, 2018**
         **New York, New York**

# TABLE OF CONTENTS

Preliminary Statement......................................................................................................1

Discussion.......................................................................................................................2

    A.  Fair Labor Standards Act.................................................................................2

    B.  Cheeks v. Freeport Pancake House..................................................................3

    C.  FLSA's Statutorily-Protected Attorney's Fees.................................................4

    D.  Inherit Authority to Sanction..........................................................................5

    E.  New York Judiciary Law 475..........................................................................7

Argument.........................................................................................................................8

    A.  Defendants' Circumvention of *Cheeks* Warrants Sanctions.............................8

    B.  Mr. Raphan's Advocating Defendants'
        Non-Compliance with *Cheeks* Warrants Sanctions........................................10

Plaintiff's Counsel is Entitled to
Reasonable Attorneys Fees and Expenses.......................................................................13

    A.  The Lodestar Method is the
        Presumptive Starting Point in Fee Award Analysis in the Second Circuit .....13

    B.  The Hourly Rate of Plaintiff's Counsel is
        Reasonable Within the Second Circuit Standard.............................................14

    C.  The Hours Expended by Plaintiff's Counsel Litigating
        the Matter are Reasonable as set forth in the Second Circuit...........................15

Conclusion......................................................................................................................16

## PRELIMINARY STATEMENT

The facts of this case serve as a poster child for why the Second Circuit Court of Appeals held in *Cheeks v. Freeport Pancake House, Inc.* that all settlements agreements in Fair Labor Standards Act cases require judicial approval. Facing significant financial exposure, on multiple occasions Defendant Thomas Kaller attempted to provide Plaintiff, Gustavo Santos, with a direct cash payoff to drop this lawsuit. Ultimately "successful," Defendants were able to circumvent the requirements of *Cheeks*. By doing so, Defendants were able to 1) settle the case for significantly less than their financial exposure with respect to Santos; 2) avoid further financial exposure through eliminating a potential chance of conditional certification; and 3) not pay statutorily required plaintiff's attorney's fees under the FLSA and NYLL.

If the Court refuses to impose sanctions against Defendant Kaller, this case will regrettably serve as a blueprint for future employers to avoid compliance with *Cheeks*. Management-side attorneys will take note of this case and advise their clients accordingly. Specifically, management-side attorneys will use this case as a means to justify direct payoffs to disadvantaged employees. In addition, management side attorneys will use this case as a further opportunity to have their clients avoid paying statutorily required plaintiff-side attorney's fees. In short, if the actions of Defendant Kaller become permissible, uneducated plaintiffs with little bargaining power will continuously be taken advantage of and the FLSA will be gutted.

Of course, though, the actions of Mr. Kaller are not the law of the land, as they are impermissible under *Cheeks*. As this Court knows, *Cheeks* requires that all settlement agreements brought under the FLSA are subject to judicial approval. Undoubtedly, this requirement was known by Eric Raphan, lead attorney for Defendants. Mr. Raphan has specialized in labor and employment law for over 10 years. It was the responsibility of Mr. Raphan to inform his clients of *Cheeks*. Mr. Raphan, though, never provided the Court any indication that he advised his client of

*Cheeks.* To the contrary, Mr. Raphan supported Mr. Kaller's actions and seemingly encouraged him to settle directly with Mr. Santos, outside the supervision of the court. Given that Mr. Raphan failed to meet his ethical responsibilities, sanctions are justified.

Indeed, just as it is imperative for future employers to know that cash payoffs in circumvention of *Cheeks* will not be tolerated, a message must be sent that attorneys cannot aid their clients' non-compliance with *Cheeks.* By sanctioning Mr. Raphan, management-side attorneys will understand their obligation not just to inform their clients of the requirements of *Cheeks*, but, in addition, not to advocate their non-compliance.

## DISCUSSION

### A.   The Fair Labor Standards Act

The purpose of enacting the FLSA was to rectify "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The Supreme Court has long recognized that the purpose of the FLSA was to ensure the protection of disadvantaged employees against unscrupulous employers.

In *Brooklyn Savings Bank v. O'Neil,* the Supreme Court noted that "the [FLSA] was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency." 324 U.S. 697, 706 (1945). The year after *Brooklyn Savings Bank*, the Supreme Court had to determine the validity of a settlement reached under the FLSA. *See D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946). In dicta, the Supreme Court "suggested" that "employees may waive FLSA claims pursuant to judicially-supervised settlements." *See Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, at *39 (E.D.N.Y 2014) (Judge Irizarry discussing *Gangi* while discussing the history and intent of the

2

FLSA). In addition, three years after *Gangi*, Congress passed the Fair Labor Standards Act Amendments of 1949. This required the supervision of settlements by the Secretary of Labor. *See* 29 U.S.C. § 216(c).

Prior to *Cheeks*, there was a growing concern among district court judges in the Second Circuit that judicial approval of settlements was required to protect the rights of disadvantaged employees. *See Lopez v. Nights of Cabira, LLC*, 2016 U.S. Dist. LEXIS 42554, at *8 (S.D.N.Y. March 30, 2015) ("The trend among district courts is nonetheless to continue subjecting FLSA settlements to judicial scrutiny."); *see also Armenta v. Dirty Bird Grp.*, LLC, 2014 U.S. Dist. LEXIS 93334, at *4 (S.D.N.Y. June 27, 2014) (same) (collecting cases); *see also Archer v. TNY USA Inc.*, 12 F. Supp. 3d 373, 384 N. 3. (E.D.N.Y. 2014). In *Socias*, Judge Irizarry explained the need for judicial approval in FLSA settlements:

> Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly. In recognition of this problem, the FLSA is distinct from all other statutes. 297 F.R.D. 38, 40 (E.D.N.Y. 2014).

## B. *Cheeks v. Freeport Pancake House*

In 2015, the Second Circuit held in *Cheeks v. Freeport Pancake House, Inc.*, that all FLSA settlements were subject to judicial approval. 796 F. 3d 199 (2nd Cir. 2015). In reaching this conclusion, the Second Circuit noted that requiring judicial approval of settlements was consistent with "the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" Id. at *206 *quoting A.H. Phillips, Inc. v. Wallking,* 324 U.S. 490, 493 (1945). In concluding its reasoning for requiring the judicial approval of all FLSA settlements, the Second Circuit noted that "the FLSA's primary remedial purpose [is] to prevent abuses by unscrupulous employers, and remedy the

3

disparate bargaining power between employers and employees." Id. at *207 *citing Brooklyn Sav. Bank*, 324 U.S. at *706-07.

In reaching its determination, the Second Circuit in *Cheeks* relied heavily on *Socias*. Specifically, *Cheeks* noted the need to ensure that employees receive the FLSA protections: "'although employees, through counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement, the purposes of FLSA require that it be applied even to those who would decline its protections.'" 796 F. 3d 199 at *205 *quoting Socias* at *41. *Cheeks* also agreed with the *Socias* that "judicial approval furthers the purposes of the FLSA, because '[w]ithout judicial oversight,...employers may be more inclined to offer, and employees, even when represented by counsel, may be inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the Act.'" Id. at *206; *see also Armenta*, 2014 U.S. Dist. LEXIS 93334, at *10 ("Taken to its logical conclusion, *Picerni v. Bilingual Seit & Preschool, Inc.* would permit defendants to circumvent the FLSA's 'deterrent effect' and eviscerate FLSA protections.").

Since its holding, *Cheeks* has been strictly applied. In *Sanchez v. Burgers & Cupcakes LLC*, Judge Caproni noted that "FLSA claimants do not have authority to compromise their claims without judicial or Department oversight. In contractual terms, FLSA plaintiffs lack capacity to enter into a binding agreement with the defendant that is not conditioned on court or Department approval." 2017 U.S. Dist. LEXIS 38292, at *6 (S.D.N.Y. March 16, 2017); *see also Guarnero-Ruiz v. 36-03 Food, LLC*, 2017 U.S. Dist. LEXIS 216069 (E.D.N.Y. Dec. 11, 2017) (Court refusing to approve a private settlement that was made in an attempt to circumvent *Cheeks*).

## C. FLSA Statutorily-Protected Attorney's Fees

The FLSA's attorney's fees provision ensures that "employees are not prevented from asserting their rights by an inability to retain competent counsel or the small size of their claims."

4

*Alvarez v. 894 Pizza Corp.*, 2016 U.S. Dist. LEXIS 102145, at *14 (E.D.N.Y. Aug. 2, 2016) *citing Dajbabic v. Rick's Cafe*, 995 F. 2d 210, 212 (E.D.N.Y. 2014) ("Through the enactment of fee shifting provisions in certain special categories of cases, such as those brought under the FLSA, Congress intended to ensure that that plaintiffs be able to secure competent counsel.").

Under the FLSA, attorney's fees are provided when a plaintiff is a prevailing party. "A plaintiff 'prevails' in an FLSA case if he succeed[s] on any significant issue in litigation which achieves some of the benefit...sought in bringing suit[,]" and the standard for prevailing is the same under the NYLL. *Velasquez v. Digital Page, Inc.*, 124 F. Supp. 3d 201, 301 (E.D.N.Y. 2015) *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

## D. Inherent Authority to Sanction

This Court has inherent authority to sanction parties as well as attorneys. "'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum, in their presence, and submission to their lawful mandates.'" *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) *quoting Anderson v. Dunn*, 19 U.S. 204, 227 (1821). Under this inherent power, """a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.""" Id. at *45-46, *quoting Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975) *quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974). Nothing prevents a federal court from "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." Id. at *50. Provided the award is not forbidden by Congress, "a district court possesses this inherent power to award attorney's fees where there has been fraud or when a party disrupts or delays litigation in bad faith." *See Alvarez v. 894 Pizza Corp.* 2016 U.S. LEXIS 102145 at *12 (E.D.N.Y. Aug. 2, 2016) *citing Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 357 (2nd Cir.

1999). The FLSA does not prohibit awarding attorney's fees as a sanction. *See Herman*, 196 F.3d 354 at \*357.

Employers have previously been sanctioned under the bad faith conduct exception. For example, in *Alvarez v. 894 Pizza Corp.* the Court issued sanctions against the employer because the employer made the plaintiff choose between his job or his FLSA lawsuit. 2016 U.S. LEXIS 102145 (E.D.N.Y. Aug. 2, 2016). This led to the plaintiff withdrawing his case. The Court, noting the bad faith behavior of the individual defendant, granted the plaintiff's application for attorney's fees and expenses. Id. at \*16-18. In reaching the determination that sanctions were appropriate, Magistrate Gold took into consideration the public policy considerations of the FLSA. Id. at \*17. Likewise, in *Harris v. SCA Rest. Corp.*, the Court granted attorney's fees stemming from the employer's witness tampering. 2014 U.S. Dist. LEXIS 33702 (E.D.N.Y. March 14, 2014). When considering whether to grant sanctions, the Court also examines whether the individual in question engaged in a pattern of unreasonable behavior. *See Enmon v. Prospect Capital Corp.*, 675 F. 3d 138, 149 (2nd Cir. 2012) ("But the high cost of preparing the sanctions motion is attributable largely to Arnold & Itkin's extraordinary pattern of misrepresentations and unreasonable litigation in this case.") *citing In re 60 E. 80th St.*, Equities, Inc., 218 F.3d 109, 120 (2d Cir. 2000) ("relevant to our [sanctions] inquiry is the fact that [appellant's] behavior is repetitive.").

Attorneys are not immune to sanctions under the Court's inherent authority to sanction. In addition, under 28 U.S.C. § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously...to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"; "Section 1927 authorizes the imposition of sanctions when 'there is a clear showing of bad faith on the part of an attorney.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at \*336. In determining whether

6

sanctions are appropriate, the Court examines whether they were "utterly devoid of a legal or factual basis." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at 337.

A court may "impose sanctions where the conduct of the sanctioned litigant or attorney evidences bad faith or an egregious disrespect for the Court or judicial process." *See Abbas v. Orrick, Herrington & Sutcliffe, LLP*, 2016 U.S. Dist. LEXIS 34592, at *17 (S.D.N.Y. March 16, 2016) *citing Ransmeier v. Mariani*, 718 F. 3d 64, 68 (2d Cir. 2013). A common reason for imposing sanctions is a "patently frivolous legal argument." Id. *citing Ransmeier* at *69. When "the conduct of the sanctioned litigant or attorney evinces bad faith or an egregious disrespect for the Court or judicial process" sanctions can be imposed. *Ransmeier*, 718 F. 3d at *68 (*citing Gallop v. Cheney*, 642 F. 3d 364, 370 (2d Cir. 2011).

**E.  New York Judiciary Law § 475**

New York Judiciary Law § 475 protects contingency-side lawyers from the parties directly settling with each other in an attempt to circumvent attorney's fees. In the event that the parties settle the case, the attorney is permitted to place a lien on the action that applies not just to the plaintiff, but also to the defendant. This section creates an equitable right and remedy that can be enforced in federal court. *See Machcinski v. Lehigh V.R. CO.*, 272 F. 920 (2d Cir. N.Y. 1921). Furthermore, where an action is settled in good faith but without the consent of the plaintiff's attorney, the lien is transferred to the sum agreed upon in settlement, and the attorney may enforce his lien in a suit in equity against *both the plaintiff and the defendant*. *See Fenwick v. Metropolitan S. R. Co.*, 173 N.Y. 633 (N.Y. 1903). Finally, the lien of an attorney upon the cause of an action of his client cannot be affected by any settlement made by the client. *See Ekelman v. Marano*, 251 N.Y. 173 (N.Y. 1929).

7

## ARGUMENT

The critical facts in this case are seemingly not in dispute. As discussed at length in the declaration of Jacob Aronauer ("Aronauer Decl."), after this action was commenced, on three separate occasions Defendant Kaller attempted to provide Plaintiff Santos with a cash payment to coerce him to withdraw the case. The second attempt involved a cash payment of $20,940. After Plaintiff's Counsel sought the Court's intervention because Defendants' actions were clearly in violation of Cheeks, Mr. Raphan took the position that Mr. Kaller's actions were permissible. The third time it transpired, this office once again sought the intervention of the Court because this time a settlement agreement had been completed in direct violation of Cheeks. And once again, Mr. Raphan took the position that his client's actions were completely permissible.

## A. Defendants' Circumvention of Cheeks Warrants Sanctions

Sanctions should be imposed against Defendant Kaller and the two corporations he owns, ET&K Foods Inc. and Bet-ER By Far Meats Inc., respectively (collectively "Defendants"). Defendant Kaller engaged in bad faith when on at least three separate occasions he attempted to provide Santos with a direct cash payment to withdraw the case. Kaller did not have a colorable reason to engage in these actions. Rather, his actions were made in bad faith so as to settle the case for less than its fair value and to avoid paying Plaintiff's Counsel's statutorily entitled attorney's fees.

Santos is the type of individual the FLSA was designed to protect. *See Socias*, 297 F.R.D. at 40 ("Low wage employees...often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly"). Santos' highest level of education is the second grade. *See* dkt. 30 at pg. 84. The most Santos ever earned at Defendants was $470 per week. It goes without saying that Santos is not on equal footing with Defendant Kaller, a

8

sophisticated businessman who owns real estate along with two supermarkets. By settling directly with Santos and therefore avoiding having the Court review the settlement terms, Defendant Kaller was able to (presumably) settle the case for a fraction of its worth (while we do not know the terms of the original settlement agreement, we do know that Kaller previously offered Santos $20,940—which is significantly less than the case's value). *See* dkt 34 and 35, respectively.

In Judge Scanlon's prior order, Judge Scanlon held that it is permissible for the parties (regardless of the lack of equal bargaining power) to negotiate amongst themselves. There is, though, an important distinction to be made between the *negotiation* of a settlement and the *completion* of a settlement. And it is clear that on three separate occasions Defendant Kaller tried to directly *finalize* a settlement through the form of a direct cash payment. While Judge Scanlon ruled that it was permissible for the parties to negotiate amongst themselves, at no point did Judge Scanlon or Judge Irizarry rule that the parties could complete a settlement without court approval. Furthermore, after the second attempted cash pay off in June 2017 by Kaller, this office warned Kaller that his actions were in violation of *Cheeks*.

The facts herein are analogous to *Alvarez v. 894 Pizza Corp*. As in *Alvarez*, the defendant directly negotiated with the plaintiff in telling the plaintiff that he had to withdraw his lawsuit in order to keep his job. This led to the plaintiff informing his attorney to withdraw the complaint. Here, Defendant Kaller settled the case with Santos directly, which also led to Santos directing this office to withdraw the case. We know that a settlement was reached because Mr. Raphan acknowledged as such to the Court. *See* dkt 45, at pg. 3, Mr. Raphan's letter to the Court ("Stated simply, Plaintiff and Defendants decided on their own to negotiate and complete a settlement without counsel, which is their absolute right to do"). The actions by Kaller were taken in bad faith, with the purpose of causing a properly filed lawsuit to be withdrawn so as to settle the case

9

for less than its fair value and circumvent having to pay Plaintiff's attorney's fees. Such an action warrants sanctions.

Ultimately, there is no legal or factual basis for Kaller settling the case without approval and trying to avoid paying Plaintiff's statutorily entitled attorney's fees. *See Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999) (bad faith can be inferred if the actions are so completely without merit as to require the conclusion they were undertaken for some improper purpose); *see also Amerisource Corp. v. RxUSA Int'l Inc.*, 2010 U.S. Dist. 67108, at *17 (sanctions issued against a non-party for the alteration of e-mails); *see also Fox Indus. V. Gurovich,* 2006 U.S. Dist. LEXIS 73035 (E.D.N.Y. Oct. 6, 2006) (sanctions imposed against attorney attempting to obstruct the subpoena process). In determining whether sanctions are appropriate against Mr. Kaller, I ask that the Court note that on three separate occasions he physically provided currency to my client to settle the case. After writing to the Court and reminding Defendants of their obligation under *Cheeks* after the second occasion (when Mr. Kaller provided Santos with $20,940), Kaller should have relented. Kaller, though, did not, and the fact that he engaged in repeated attempts to settle the case directly with Santos (not negotiate—but *complete settlement*) should be taken into consideration by the Court when weighing whether to impose sanctions. *See Enmon v. Prospect Capital Corp.*, 675 F. 3d 138, 144 (2d Cir. 2012) (in imposing sanctions the court took into consideration the defendant's *pattern* of unreasonable behavior). Regrettably, it is not surprising that in August 2017 Kaller made a third, successful attempt to complete a settlement with Santos. This is because Kaller's lawyer, Mr. Raphan, advocated for his non-compliance with *Cheeks.*

## B. **Mr. Raphan's Advocating his Client's Non-Compliance with Cheeks Warrants Sanctions**

Sanctions should also be imposed on Mr. Kaller's attorney, Eric Raphan. On two separate occasions, Mr. Raphan made the baseless argument that a settlement agreement did not have to be

approved by the Court. Mr. Raphan, who is an experienced labor and employment law attorney, acted in bad faith in making an argument he knew was without merit. Accordingly, sanctions are justified against Mr. Raphan under the bad faith exception or, in the alternative, Section 1927.[1]

On June 26, 2017, when Mr. Raphan denied any wrongdoing by his client even though the parties had completed the settlement agreement through an exchange of monies ($20,940), Mr. Raphan ignored the law of *Cheeks*. *See,* generally, dkt 35. Instead, Mr. Raphan chose to rely on a case that was decided several years before *Cheeks* and ultimately still required Court approval. Id.[2] As an attorney who specializes in labor and employment law who had previously sought the Court's permission for the completion of a settlement agreement, Mr. Raphan knew better. Mr. Raphan, though, instead chose to make a baseless argument that was in direct contravention of *Cheeks*. At no point after the second attempted cash payoff in June 2017 did Mr. Raphan express to me or the Court that he would ensure his client's compliance with *Cheeks*. While it is recognized that the Court does not want to curb an attorney from being a zealous advocate, there is a line. And Mr. Raphan crossed it.

Not surprisingly, Mr. Raphan's baseless argument gave Mr. Kaller the confidence he needed to once again try to settle the case without Court approval. This time, though, Santos did not return the monies to me and, instead, instructed me to withdraw the lawsuit. *See* dkt 43. Again, for the second time Mr. Raphan argued to the Court that his client's actions were permissible even though he knew that a settlement agreement had to be approved by the Court and

---

[1] To be clear, as held by Judge Scanlon, Mr. Kaller was within his rights to directly negotiate with Plaintiff Santos (even though Mr. Santos is an uneducated immigrant who can't speak English and Mr. Kaller is a sophisticated businessman). Judge Scanlon, though, never held that the parties are permitted to complete a settlement. That is because to rule so would be in violation of *Cheeks*.

[2] The case Mr. Raphan relies on, *Misiewicz v. D'Onofrio General Contractors Corp.*, 2010 U.S. Dist. LEXIS 60985 (E.D.N.Y. May 17, 2010) was decided five years before *Cheeks*. Furthermore, in *Misiewicz*, the Court had a hearing to ascertain if the settlement discussion reached between the parties was fair. Here, that has obviously now become an impossibility.

11

that Plaintiff's counsel would not receive his statutorily entitled attorney's fees. *See* dkt 45.[3]

Specifically, even though Mr. Raphan in a separate matter sought to obtain the Court's permission

to receive the Court's approval to finalize a settlement, Mr. Raphan took the baseless position that

it was permissible for the parties to settle the case without court approval ("Stated simply, Plaintiff

and Defendants decided on their own to negotiate and complete a settlement without counsel,

which is their absolute right to do." *See* dkt 45, pg. 3. *See Malkan v. Muta*, 699 Fed. Appx. 81 (2d

Cir. 2017) (granting sanctions against the attorney for filing a motion with no factual or legal

basis). The arguments proposed by Mr. Raphan fall under the umbrella of "frivolous plus." *See In

re Gushlak*, 2012 U.S. Dist. LEXIS 9160 (E.D.N.Y. July 2, 2012). Here, there is direct evidence

(*Cheeks*) which leads Mr. Raphan to know that his argument that the parties can settle without

Cheeks approval is frivolous. Id. ("One type of circumstantial evidence of such knowledge is

evidence that the argument was made for an improper purpose.") Here, the improper purpose was

to allow his client to take advantage of Santos by settling with him directly and circumventing his

responsibility to pay attorney's fees.

In the alternative, sanctions should be imposed against Mr. Raphan under 28 U.S.C. § 1927.

Sanctions under Section 1927 require a showing that an "attorney's actions are so completely

without merit as to require the conclusion that they must have been undertaken for some improper

purpose such as delay,' and "a finding of conduct constituting or akin to bad faith." *See In Re 60

East 80th Street Equities*, 218 F.3d 115 (2d Cir. 2000); *see also Kramer v. Mahia* (In re Khan), 488

B.R. 515, 530 (Bankr. E.D.N.Y. 2011) ("In balancing the goals of Section 1927 and the promotion

of creative and zealous professional advocacy, courts have found that the interests of justice

sometimes require the balance to tip in favor of issuing sanctions"); *see also Veneziano v. Long

Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 694 (N.J.D. 2002) (granting

---

[3] Annexed as Exhibit J to the declaration of Jacob Aronauer is the plaintiff's counsel's request for the court to approve the settlement in *Chen et al. v. Cromwell Soho Operating LLC*. Mr. Raphan represented the defendants in this matter.

sanctions because the attorney's conduct strayed far beyond mere misunderstanding, bad judgment, or well-intentioned zeal for making baseless legal arguments). On two separate occasions, Mr. Raphan advocated for his client's violation of *Cheeks*. This act was an improper purpose, done without any legal merit and is a textbook example of "bad faith conduct by attorneys." Sanctions under 1927 are warranted.

Finally, when taking into consideration whether sanctions are warranted, I ask that the Court take into consideration New York Judiciary law § 475. To the extent that Defendants seek to argue that only Plaintiff is responsible for the payment of attorney's fees in this case, their argument is directly against New York Judiciary Law § 475. *See Fenwick v. Metropolitan S.R. Co.*, 173 N.Y. 633 (N.Y. 1903) (holding that that the attorney may enforce his lien in a suit in equity against both the plaintiff and the defendant).

## PLAINTIFF'S COUNSEL IS ENTITLED TO REASONABLE ATTORNEYS FEES AND EXPENSES

Plaintiff's Counsel is entitled to reasonable attorneys' fees to compensate them for their work which resulted in a settlement between the Plaintiff and individual Defendant. The request for $37,651.70, pursuant to the lodestar method of fee calculation, plus expenses, is reasonable and well within the range approved by courts in similar cases. Courts in the Second Circuit apply the lodestar method. *See Wenping Wang v. Masago Nego Asian Inc.*, 2016 U.S. Dist. LEXIS 132997, at *8-10 (E.D.N.Y. Sept. 26, 2016). Here, as admitted by Mr. Raphan, the parties reached a settlement. As such, Plaintiff's Counsel's fees and expenses should be approved so long as the hours expended are reasonable.

## A. The Lodestar Method is the Presumptive Starting Point in Fee Award Analysis in the Second Circuit

The traditional practice of the Second Circuit in determining fee awards is to multiply the reasonable hours expended by the reasonable hourly rate, also known as the lodestar method.

13

"The lodestar represents the presumptively reasonable fee award, but the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *See Tiacoapa v. Carregal*, 386 F.Supp.2d. 362, 369 (S.D.N.Y. 2005). Within the Second Circuit the lodestar method is favored for its promotion of public policy concerns and its ease of application. *See Allende v. Unitech Design, Inc.,* 783 F. Supp.2d, 509, 513-14 (*citing Perdue v. Kenny A., U.S.*, 130 S.Ct. 1662, 1672-73 (2010). As noted by the Court in *Allende*, utilizing the lodestar method to award attorney's fees (based on the attorney's regular hourly rate) effectuates the greater public policy consideration of providing an FLSA plaintiff with quality representation, because counsel is placed in the same condition as he would have been in the regular course of business, representing any other plaintiff who pays out of pocket. Id. This consideration is of great importance because the typical FLSA plaintiff is represented on a contingent fee or pro bono basis, and there is no guarantee that counsel will be paid for his or her work, despite diligent effort.

Failure to award Plaintiff's Counsel's fees and expenses in their entirety would deter qualified counsel from accepting single plaintiff claims. As such, an award of attorneys' fees utilizing the lodestar method of calculation would be the only reasonable means of achieving the objective of the FLSA statutory attorney's fees award provision.

## B. The Hourly Rate of Plaintiff's Counsel is Reasonable Within Second Circuit Standards

"The reasonable hourly rate is a paying client would be willing to pay." *See Imbeault v. Rick's Cabaret Intern. Inc., RCI Entertainment (New York) Inc., Peregrine Enterprises, Inc.*, No. 08 Civ. 5458(GEL), (2009 WL 2482134), *citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "This is determined by reference to rates, 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Imbeault v. Rick's Cabaret Intern. Inc., RCI Entertainment*

14